**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Beverly Gale Watson, | ) | CV-05-1968-PCT-MHM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jo Anne Barnhart, Commissioner of the | ) | |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ————————————————— | ) | |

Plaintiff Beverly Gale Watson ("Plaintiff" or "Ms. Watson ") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying her claim for disability insurance benefits.  42 U.S.C. § 405(g).

**I.      Procedural History**

Plaintiff filed applications for disabled widow's benefits and supplemental security income on October 27, 1994, alleging a disability since September 10, 1994. (Transcript "Tr."118-20; 101-104).    Plaintiff's applications were denied initially and upon reconsideration (Tr.88-91, 94-98,105-108,112-116) and after a hearing in front of an ALJ, her applications were denied in a decision dated August 10, 1996. (Tr.12-22).  The Appeals Council denied Plaintiff's request for review on May 26, 1998.  (Tr.4-6).  Plaintiff then commenced an action in District Court contesting the ruling, CIV 98-0959-PCT-EHC.  After the Plaintiff filed her motion for summary judgment, the Parties entered into a stipulated agreement to remand the action back to the Commissioner. (Tr.324-25).  The District Court,

the Honorable Earl H. Carroll presiding, granted the Parities' stipulation and remanded the action back to the Commissioner pursuant to sentence 4 of 42 U.S.C. § 405(g).  (Tr.323). The Appeals Council remanded the action to the ALJ with specific findings and instructions, including stating in pertinent part:

> The Appeals Council concludes that the Administrative Law Judge's following conclusions are not grounded in the evidence or otherwise do not support his ultimate conclusion as to the claimant's credibility for the reason given:
>
> ...
>
> 6.  Although the claimant alleged side-effects secondary to the medications she takes side-effects are not prevalent in these medications and no physician has cited side-effects as a limiting factor (20): The medications taken by the claimant do have side-effects, side-effects are acknowledged by her treating physicians and medications were changed to alleviate side-effects. (Tr. 206, 212, 231, 242).

> For the foregoing reasons, the Administrative Law Judge will reevaluate the claimant's credibility pursuant to 20 CFR 404.1529, 416.929 and SSR 96-7p. (Tr.328-29).

Upon remand, the ALJ held a hearing on January 14, 2000. (Tr.416-78).  At the hearing, Plaintiff offered testimony as to her condition.  Testimony was also received from a medical expert Charles Bahn, M.D. ("Dr. Bahn"). (Id.).  On August 11, 2000, the ALJ issued his decision denying Plaintiff's disability status. (Tr.308-19).  The Appeals Council denied Plaintiff's request for further review approximately five years later on June 7, 2005. (Tr.260-62).  Plaintiff then initiated the present action for judicial review pursuant to 42 U.S.C. § 405(g) on July 1, 2005.  On October 11, 2006, the Honorable Paul G. Rosenblatt recused himself from this matter pursuant to 28 U.S.C. § 455(a) and the case was assigned to this Court.

## II.   Background Facts

### A.   Plaintiff's Medical History

On August 7, 1992, Plaintiff underwent surgery for a gastric outlet obstruction secondary to a duodenal ulcer at Riverside General Hospital. (Tr. 121-166). On August 10, 1992, additional surgery was performed for her gastric outlet obstruction referred to as exploratory laparotomy, vagotomy, gastroenterostomy. (Tr.130). Plaintiff received follow up care at Riverside General and reported doing reasonably well with some symptoms of gas,

1   and "occasional dumping" with large meals or drinking too much before a meal. (Tr.155-56).

2   In July and August of 1994, Plaintiff received treatment at the Prescott Free Clinic. (Tr.167-

3   68), where it was noted that Plaintiff's hypertension was "out of control" and recorded

4   Plaintiff's blood pressure at its highest to be 216/102.  (Tr.167-68).

5          On October 3, 1994, Plaintiff reported to Yavapai County Medical Center stating

6   problems   urinating and eating as well as nausea, vomiting and headaches.  (Tr.172).

7   Plaintiff's blood pressure at the time was 242/150. (Id.).  Plaintiff was admitted to the ICU

8   and diagnosed with malignant hypertension and probable gastric outlet obstruction. (Tr.173).

9   On October 15, 1994, Thomas W. Rusing, M.D. ("Dr. Rusing"), diagnosed Plaintiff with

10  gastric outlet obstruction and performed a surgical procedure consisting of an exploratory

11  laparotomy, distal gastric resection with roux-en-y gastrojenunostomy.  (Tr.175).    No

12  complications were reported. (Tr.178). On October 27, 1994, after post-operative evaluation,

13  Plaintiff was discharged from the medical center. (Tr.169-70).  On December 8, 1994, for a

14  follow-up visit, Dr. Rusing reported that although Plaintiff complained of stomachaches and

15  occasional diarrhea that "overall [Plaintiff] appears to be doing well." (Tr.229).  Dr. Rusing

16  recorded that Plaintiff did report some symptoms consistent with "dumping syndrome."  Dr.

17  Rusing recommended  that Plaintiff proceed with an "upper GI series to document the status

18  of her stomach and the degree of emptying." (Tr.229).  On the same day, Dr. Rusing issued

19  a letter to the Arizona Department of Economic Security in response to the Department's

20  request for information on Plaintiff. (Tr.193).  Dr. Rusing noted that "[f]rom a gastric

21  standpoint her symptoms are much improved, but she persists at having some sequelae of her

22  gastric surgery.  Her overall prognosis is good, but it is too early to give a definite statement

23  on her prognosis and ability to work, etc., at this time." (Tr.193-94).

24         On January 23, 1995, Plaintiff was examined by Milton Schild, M.D. ("Dr. Schild"),

25  referred by her primary care physician Fred Markham, M.D. ("Dr. Markham").  Dr. Schild

26  diagnosed Plaintiff with "reflux symptoms, probably due to bile reflux." (Tr.201).  He also

27  found Plaintiff's dumping syndrome to be improved and prescribed Plaintiff to resume

28  Propulsid.  (Id.).  On February 21, 1995, Dr. Schild again saw Plaintiff and noted that the

1  Plaintiff's mouth ulcers and her condition had improved (Tr.232) and was to continue with
2  Propulsid. (Tr.232).  On August 21, 1995, Dr. Schild again saw Plaintiff and noted that she
3  had "not been doing well for a number of weeks" and that her prescription for Propulsid had
4  been stopped approximately two months prior. (Tr.231).  Dr. Schild further noted that
5  Plaintiff had developed "increasing nausea, bloating, gas, regurgitation, and abdominal
6  discomfort." (Id.).  Dr. Schild's impression was that Plaintiff was experiencing "[r]ecurrent
7  symptoms off Propulsid mainly due to bile reflux esophagitis" and directed that Plaintiff
8  resume Propulsid. (Id.).

9  Plaintiff's treating physician from November 1994 through March 1996 was Dr.
10  Markham. (Tr.204-218; 233-242). Dr. Markham treated Plaintiff on multiple occasions for
11  such ailments as headaches and high blood pressure.  (Tr.205-06, 208, 210, 211-12, 235).
12  For instance, on April 11, 1995, Dr. Markham noted that Plaintiff's "blood pressure is not
13  well controlled now." (Tr.206).  Dr. Markham noted that Plaintiff has a "lifetime history of
14  migraines" and diagnosed Plaintiff with "mixed headache disorder" and hypertension.
15  (Tr.205).  With respect to Plaintiff's headaches, on April 18, 1995, Dr. Markham prescribed
16  Paxil at night as well as refilled her prescription for Stadol.  (Id.).  On May 5, 1995, Dr.
17  Markham issued a general letter stating that "[Plaintiff] is totally disabled due to a
18  multiplicity of medical problems and will remain so for one year." (Tr.204).

19  It is not exactly clear from the record the exact date Plaintiff began treating with Allen
20  Cottle, M.D. ("Dr. Cottle") (Tr.371-73); however, on December 26, 1997, Dr. Cottle
21  performed a physical capacities evaluation of Plaintiff. (Tr.257-59). Dr. Cottle determined
22  that Plaintiff could sit for at total of four hours, and stand and walk for a total of two hours,
23  in an eight-hour work day.  (Tr.257).  Dr. Cottle further determined that Plaintiff could only
24  occasionally lift up to ten pounds and frequently lift up to five pounds. (Id.).  He further
25  concluded that Plaintiff suffered from headaches, nausea and abdomen pain that he
26  determined to be "moderately severe," which is defined as "an impairment which seriously
27  affects ability to function." (Tr.258-59).  On September 8, 1999, Dr. Cottle completed
28  another physical capacities evaluation of Plaintiff. (Tr.365-67).  He again found that Plaintiff

could sit four hours, stand and walk for two hours of an eight-hour workday and could only occasionally lift up to ten pounds. (Tr.365). Dr. Cottle again concluded that Plaintiff suffered from headaches, nausea and abdomen pain and determined the pain to be "moderately severe." (Tr. 366-67). During the course of Plaintiff's treatment, Dr. Cottle prescribed multiple medications to Plaintiff including Stadol, Prilosec, Prevacid, Adalat, Atenolol, Propulsid, Vasotec, Depakote, Promethazine, Vancenase and Normodyne. (Tr.336-344).

Plaintiff was also treated by George E. Bryan II, M.D. ("Dr. Bryan") upon referral from Dr. Cottle. On July 9, 1998, Plaintiff reported having severe headaches and on average fifteen headaches per month, ten of which were severe. During Plaintiff's visit on that day, she was suffering from a severe headache and Dr. Bryan provided Plaintiff with an injection of Imitrex, which was helpful. (Tr.364). On October 22, 1998, Plaintiff was again seen by Dr. Byran. (Tr. 362). Plaintiff reported having a dramatic increase in the headache "intensity, duration and frequency." (Tr.362). Plaintiff stated that the headaches were lasting two to four days and occurred at least weekly. Dr. Bryan provided Plaintiff with Amerge and Prednisone to help with the headaches. (Id.).

On September 9, 1999, Plaintiff was examined by Robert Barker II, M.D. ("Dr. Barker") at the request of the Arizona Department of Economic Security. (Tr. 330). Dr. Barker's assessment of Plaintiff's functional capabilities was that Plaintiff could be on her feet and sit for six hours in an eight-hour work day and could occasionally and frequently lift 20 pounds. (Tr.331).[1] Dr. Barker noted no other material limitations other than Plaintiff "should avoid hazardous machinery and unprotected heights." (Tr.332).

**B.    Hearing Testimony**

The ALJ conducted a hearing on January 14, 2000, at which time Plaintiff, Plaintiff's counsel and Dr. Bahn, a medical expert were present. Plaintiff testified that she experiences such problems as stomach cramps, bloating, and diarrhea. (Tr.437). With respect to her

---

[1]In Dr. Barker's medical assessment form he concluded that Plaintiff could sit, stand and walk for eight hours in an eight-hour workday. (Tr.334).

1    diarrhea, Plaintiff testified that she deals with such problems three to four times per week and
2    has since 1994. (Id.).  Plaintiff testified that she often deals with nausea and vomiting
3    problems.  For instance, Plaintiff testified that she throws up two to three times per week.
4    (Tr.461).  Plaintiff also testified that she suffers from high blood pressure and migraine
5    headaches, and sustains such headaches three to four times per week. (Tr.420,449).  At the
6    time of the hearing, Plaintiff was taking eight pills every day to control her blood pressure.
7    (Tr.450).

8         Dr. Bahn offered his testimony during the hearing and opined that based upon his
9    review of the medical evidence, Plaintiff possessed the residual functional capacity to
10   perform light work. (Tr.422).  Dr. Bahn reviewed seven different diagnostic considerations
11   and concluded that none of them suggested Plaintiff was disabled. (Tr.421-22).  However,
12   in response to Plaintiff counsel's question as to whether Plaintiff's symptomatology either
13   from the stomach disorder or headaches would prevent the Plaintiff from working full-time,
14   that is "eight hours a day, forty hours a week, fifty weeks a year," Dr. Bahn agreed that
15   Plaintiff could not sustain such a work schedule. (Tr.423).  Dr. Bahn pointed to Plaintiff's
16   "severe headaches" to justify such a finding. (Id.).  The ALJ confronted Dr. Bahn regarding
17   this finding stating that "[e]verybody has sick leave and they have days they're not going to
18   work." (Tr.424).  Dr. Bahn later agreed that with such sick leave, it would not materially
19   impact Plaintiff's attendance at work. (Tr.424).

20        **C.    ALJ's Conclusion**

21        On August 11, 2000, the ALJ rendered his opinion finding Plaintiff not"disabled"
22   within the meaning of the Social Security Act.  (Tr.311-19).  The ALJ concluded that the
23   Plaintiff is capable of performing light work despite her alleged impairments. (Tr.312).  The
24   ALJ stated that he accorded "significant weight to the opinion of Dr. Bahn, the medical
25   expert, in concluding that the claimant could perform light work." (Id.).  The ALJ concluded
26   that Plaintiff's migraine headaches, while severe within the meaning of the Social Security
27   Act "did not prevent her from performing light work on a sustained 40-hour week basis."
28   The ALJ stated that "Dr. Bahn noted the [Plaintiff] could use sick time when necessary."

1    (Id.). With respect to Plaintiff's complaints regarding her stomach problems, the ALJ

2    concluded that the evidence as a whole did not suggest that Plaintiff has been prevented from

3    performing work on a sustained 40-hour week basis. (Tr.314). Plaintiff discounted Plaintiff's

4    credibility as to the severity of Plaintiff's stomach problems on several factors: (1) that

5    Plaintiff's appetite and sleep improved significantly after her surgery in October 1994; (2)

6    that Plaintiff maintained her weight over the course of time even though Plaintiff complains

7    of stomach problems including diarrhea and vomiting; (3) the gap in treatment from May 15,

8    1996 to March 11, 1997; and (4) Plaintiff's participation in a computer class which called for

9    Plaintiff to sit for long periods of time. (Tr.315). In taking into account these factors, the

10   ALJ concluded that "a more reliable assessment of the [Plaintiff's] functional capacity can

11   be obtained from the objective medical evidence as a whole," which, according to the ALJ,

12   did not support Plaintiff's functional limitations and symptoms associated with her

13   gastrointestinal problems. (Id.). The ALJ also discounted Plaintiff's credibility associated

14   with her complaints of migraine headaches. The ALJ noted several factors to support his

15   determination. First, the ALJ noted that Plaintiff did not mention her migraine symptoms to

16   Dr. Cottle in July and September of 1999. In addition, the ALJ cited that the last treatment

17   record for Plaintiff's headaches was taken in October of 1998 and that Plaintiff's treatment

18   records were outdated. (Tr.316).

19       The ALJ cited the opinions and findings from Plaintiff's treating physicians, Drs.

20   Markham and Cottle, but rejected their findings that Plaintiff was not capable of performing

21   any work due to her impairments. The ALJ stated that Dr. Markham's findings were "not

22   supported by his treatment notes" and that Dr. Markham failed to provide  a narrative

23   summary of his statement. (Tr.317). Moreover, as for Dr. Cottle's residual functional

24   capacity findings on December 26, 1998, the ALJ noted that it appeared to have been done

25   without any prior treatment of the Plaintiff, thus was afforded less weight than the evaluation

26   performed by Dr. Barker. (Id.). In addition, the ALJ rejected Dr. Cottle's September 8, 1999,

27   functional exam finding that the restriction of the number of hours Plaintiff could sit in a

28   chair was rebutted by her participation in a computer class requiring long sitting periods and

the objective medical evidence did not support the restriction as to the amount of weight Plaintiff could lift. (Tr.317-18).   Thus, in rejecting Plaintiff's credibility and the findings of Plaintiff's treating physicians, and relying upon the findings of Dr. Bahn and Dr. Barker, the ALJ concluded that Plaintiff could perform light work on a sustained 40-hour week basis. (Tr.318). Thus, the ALJ determined that Plaintiff could perform her past work as a pharmacy clerk, video store clerk and waitress, despite her physical impairments. (Id.).

**III.    Standard of Review**

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).  Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1)    determine whether the applicant is engaged in "substantial gainful activity;"

(2)    determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3)    determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe

as to preclude the applicant from engaging in substantial gainful activity;

(4)   if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5)   if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

## IV.   Discussion

Plaintiff raises the following issues on appeal: (1) that the ALJ failed to comply with the Appeals Council's remand order; (2) that the ALJ improperly rejected the opinions of Plaintiff's treating physicians; (3) that the ALJ erred in assessing Plaintiff's residual functional capacity without support from the record; and (4) that the ALJ erred in relying on Dr. Bahn's opinion regarding vocational matters. The Court will address these issues below.

### A.   Compliance with the Remand Order

Plaintiff raises two issues with respect to the ALJ's following and application of the Appeals Council's remand order. First, Plaintiff contends that the ALJ failed to take into account the resulting side effects of Plaintiff's medications or the needs to modify such medications. Second, Plaintiff contends that the ALJ did not properly ground his credibility determination in record evidence when evaluating Plaintiff's credibility.

### (1)   Medications and Resulting Side Effects

As noted above, the remand order from the Appeals Council to the ALJ stated that contrary to the original order denying Social Security benefits in 1996, "[t]he medications taken by the claimant do have side-effects, side-effects are acknowledged by her treating physicians and medications were changed to alleviate side-effects. (Tr. 328-29; 206, 212, 231, 242)." (Tr.328-29). Thus, the ALJ was directed to reevaluate the claimant's credibility pursuant to 20 CFR 404.1529, 416.929 and SSR 96-7p. (Id.). However, as noted by Plaintiff,

1   the ALJ's order denying benefits to Plaintiff on August 11, 2000, does not acknowledge or

2   mention any side effects incurred by Plaintiff resulting from her medications.  Rather, in

3   rejecting the Plaintiff's credibility regarding the severity of her symptoms, the ALJ cited

4   other factors such as Plaintiff's continued appetite and weight stability despite Plaintiff's

5   stomach complaints. (Tr.315).    Plaintiff contends the ALJ's omission of any such

6   consideration is significant as the Appeals Council's remand order expressly instructed the

7   ALJ to take Plaintiff's side effects from her medications into account, especially considering

8   the numerous medications Plaintiff was prescribed. (Tr.336-344).  In opposition, Defendant

9   contends that the failure of the ALJ to address the side effects from Plaintiff's medications

10  was harmless, at most, as the medical record does not support any significant side effects

11  from Plaintiff's medications.

12          The Court finds the ALJ's failure to discuss or even acknowledge the side-effects from

13  Plaintiff's numerous medications to be troubling.  The Appeals Council, in its remand order,

14  expressly stated that the medications taken by Plaintiff do have side effects and the ALJ was

15  ordered to consider such side effects.  (Tr.328-29).  In addition, the Court does not find

16  persuasive the Defendant's argument that even though the ALJ did not cite or acknowledge

17  the side-effects of Plaintiff's medications the medical record does not support the existence

18  of any material side effects.  That argument is in direct contradiction to the Appeals Council's

19  remand order which expressly stated that such side effects did exist and the ALJ was to

20  consider them.  In addition, the Ninth Circuit in Connett v. Barnhart, 340 F.3d 871, 874 (9th

21  Cir. 2003) made clear that "it [is] error for the district court to affirm the ALJ's credibility

22  decision based on evidence that the ALJ did not discuss." (citing SEC v. Chenery Corp., 332

23  U.S. 194, 196 (1947).  In contradiction, to the above authority, Defendant contends that even

24  though the ALJ did not expressly address the medication side effects issue, this Court, upon

25  its own review of the overall record, should find such an error, if any, harmless as Plaintiff's

26  alleged side-effects are not supported. See Richardson, 402 U.S. at 401. However, while the

27  Court considers the overall record, it is the ALJ's responsibility to set forth specifically the

28  reasons for rejecting the credibility of a claimant.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th

Cir. 1991)  (citing <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir.1986)).  In this case, the Appeals Council expressly instructed the ALJ to consider the side effects of Plaintiff's medications.  However, the ALJ did not mention these side effects in his decision, rather he relied upon several other factors.  With such express instruction from the Appeals Council and considering the number of medications prescribed to Plaintiff, the Court finds it error for the ALJ to have failed to consider this factor in his overall determination regarding Plaintiff's disability determination.

### (2)   Credibility Determination

Plaintiff contends that the ALJ also failed to comply with his obligation in rejecting the Plaintiff's testimony regarding the severity of her symptoms.  "[I]f there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be clear and convincing and supported by specific findings."  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  General findings are insufficient, rather the ALJ must identify what evidence is not credible and what evidence undermines the claimant's complaints.  <u>Id.</u>    In the instant case, there is no issue with the underlying impairments or the lack of evidence of malingering, rather the issue centers on whether the ALJ provided the requisite "clear and convincing" reasons supported by the evidence in rejecting Plaintiff's credibility regarding the severity of her symptoms.[2]

Upon reviewing the cited reasons of the ALJ, the Court finds error with respect to several of the cited bases in support of rejecting Plaintiff's credibility.  First, the Court finds the ALJ's citation to Plaintiff's ability to maintain a consistent weight despite her continued stomach impairments to be unsupported in the record.  (Tr.314-15).  The ALJ noted that this weight consideration is not consistent with the medical record and "casts doubt upon the

---

[2]As noted above, the Court finds that at least with respect to the issue of Plaintiff's medication side effects, the ALJ failed to properly consider this factor in his overall credibility determination.  The Court's inquiry in this section will address the ALJ's consideration of the other factors upon rejecting Plaintiff's credibility.

1   claimant's credibility." (Tr.315).  However, the medical record, and more specifically, the

2   testimony of the medical record from Dr. Bahn, whom the ALJ stated was given significant

3   weight, (Tr.316), does not support the ALJ's finding.  At the hearing, in response to the ALJ's

4   concern regarding Plaintiff's consistent weight, Dr. Bahn stated that her consistent weight

5   despite her "GI symptoms" was due to Plaintiff's "small frequent feeding" and "adequate

6   nutrition." (Tr.448).  However, though the ALJ afforded substantial weight to Dr. Bahn's

7   medical findings based upon the record, the ALJ still cited Plaintiff's weight as a basis in

8   support of rejecting Plaintiff's credibility regarding the severity of her stomach symptoms.

9   Such a determination simply does not have support in the record and does not provide a clear

10  and convincing basis for rejecting Plaintiff's credibility.

11          Second, the Court also finds troubling the ALJ's citation to the Plaintiff's participation

12  in a computer class, which required prolonged sitting, as a basis to reject the Plaintiff's

13  complaints of repeated bathroom visits associated with her stomach problems, such as

14  diarrhea.   (Tr. 315).   While, Dr. Markham, Plaintiff's treating physician, opined that

15  Plaintiff's back pain was likely due to her prolonged sitting, the Court does not believe this

16  factor assists in providing a clear and convincing reason in rejecting Plaintiff's stomach

17  problems.  For instance, Dr. Markham did not state that Plaintiff was required to sit for the

18  entire duration of the class or could not take breaks.  Rather, the ALJ made a medical

19  assumption upon facts that are not in the record.  Because the ALJ is not a proper medical

20  source of evidence, the ALJ's presumption is improper.  See 20 CFR § 404.1513.

21          Third, the ALJ cites that the Plaintiff's stomach condition improved significantly

22  following her surgery in October of 1994. (Tr.314).  Thus, according to the ALJ there was

23  no "clinical explanation for the increase in the [Plaintiff's] symptoms." (Id.).  However, this

24  determination is simply belied by the record.  For instance, at the hearing, Dr. Bahn

25  recognized Plaintiff's symptoms associated with her stomach problems, including dumping

26  syndrome and gastroesophegal reflux disease.  (Tr.421).  Moreover, the medical record

27  reveals that following Plaintiff's surgery in 1994, there is ample documentation of continued

28  symptoms associated with her stomach problems.  (Tr.201, 216, 231-32, 258, 366).

1    Thus, as for these specific reasons articulated by the ALJ in assisting with his

2    determination rejecting Plaintiff's credibility, the Court finds error as these reasons do not

3    lend to a "clear and convincing" basis supported by the medical record.  However, it is

4    relevant to note that the other reasons articulated by the ALJ are relevant to the ultimate

5    determination of credibility and properly considered by the ALJ.  For instance, as to

6    Plaintiff's stomach problems, the ALJ noted a ten month long gap in treatment suggesting

7    that the Plaintiff's symptoms were not as severe as suggested.  Moreover, as to Plaintiff's

8    headache complaints, the ALJ noted a discrepancy between the number of headaches alleged

9    by Plaintiff on October 22, 1998 (Tr.362) and her subsequent treatment with Dr. Cottle,

10   where she reported no symptomatic headaches.  (Tr.368, 369).  However, at the hearing on

11   August 11, 2000, the Plaintiff reported to suffering headaches three to four times per week.

12   (Tr.420).  Such factors are certainly relevant to the ALJ's determination of credibility.

13   However, when balancing these factors with the other flawed cited reasons of the ALJ used

14   in rejecting Plaintiff's credibility, the Court cannot find that the ALJ, as a whole, used the

15   requisite "clear and convincing" reasons based upon evidence in discounting Plaintiff's

16   credibility.  This determination is further bolstered by the fact that the ALJ did not take into

17   consideration the medication side effects incurred by Plaintiff.

18   **B.    Rejection of Opinions of Treating Physicians**

19   Plaintiff further contends that the ALJ erred in rejecting the opinions and findings of

20   Plaintiff's treating physicians, Dr. Markham and Dr. Cottle.  Defendant, on the other hand,

21   contends that the ALJ articulated the requisite specific and legitimate reasons for rejecting

22   these opinions.  "Although a treating physician's opinion is generally afforded the greatest

23   weight in disability cases, it is not binding on an ALJ with respect to the existence of an

24   impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144,

25   1149 (9th Cir.2001). "The ALJ may disregard the treating physician's opinion whether or not

26   that opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

27   When presented with conflicting medical opinions, the ALJ must determine credibility and

28   resolve the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). In the case of

1    a conflict, "the ALJ must give specific, legitimate reasons for disregarding the opinion of the
2    treating physician." Id. The ALJ can meet this burden by setting out a detailed and thorough
3    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and
4    making findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (quoting Magallanes
5    881 F.2d at 751.  Thus, the question before the Court is whether the ALJ properly considered
6    and disregarded Plaintiff's treating physicians' opinions as to Plaintiff's condition.

7         As noted above, on May 5, 1995, Dr. Markham issued a letter stating that "[Plaintiff]
8    is totally disabled due to a multiplicity of medical problems and will remain so for one year"
9    (Tr.204).  In rejecting this opinion as a basis for disability,  the ALJ concluded that this
10   finding was not supported by Dr. Markham's treatment notes and that Dr. Markham failed
11   to provide  a narrative summary of his statement. (Tr.317).  In addition, the ALJ concluded
12   that there was no showing that Dr. Markham was qualified to render a legal opinion as to
13   whether Plaintiff was disabled for purposes of the Social Security Act. (Id.).  However, such
14   reasons for rejecting the opinion of Dr. Markham do not rise to the level of specific and
15   legitimate, grounded in the record.  For instance, simply defaulting to a lack of support in the
16   treatment records is not sufficient to meet the ALJ's obligation. Rather, the ALJ was required
17   to set out a thorough summary of the facts and conflicting clinical evidence, stating his
18   interpretation thereof, and making findings.  Thomas 278 F.3d at 957.  In addition, the mere
19   fact that Dr. Markham was not qualified as an expert in vocational matters does not provide
20   a sufficient basis in support of simply rejecting his medical opinion without the articulation
21   of specific reasons. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (stating that
22   "treating physician's opinion on disability, even if controverted, can be rejected only with
23   specific and legitimate reasons supported by substantial evidence in the record.").

24        In addition, the ALJ also did not articulate the requisite specific and legitimate reasons
25   in rejecting the residual functional capacity findings of Dr. Cottle on two separate occasions.
26   (Tr.257-59, 365-67).  The ALJ rejected Dr. Cottle's stated significant limitations regarding
27   sitting in an eight hour day, lifting ability and "moderately severe" pain, citing broad reasons
28   such that Plaintiff's restrictions were not supported Dr. Cottle's treatment records and that

1    Plaintiff's activities, such as participation in a computer class, rebutted such limitations while

2    working.  (Tr.317-18).    However, again, such broad reasons do not rise to the level of

3    providing specific and legitimate reasons in rejecting the opinion of a treating physician.  For

4    instance, in rejecting Dr. Cottle's   December 26, 1997, residual functional capacity

5    evaluation, the ALJ stated that prior to the evaluation, Dr. Cottle had not treated Plaintiff.

6    (Tr.317).  However, even if accurate, this is of little consequence given that Dr. Cottle

7    rendered virtually the same findings again on September 8, 1999, well after he had developed

8    a history of treatment with the Plaintiff.  (Tr.365-67).[3]  In addition, the fact that Plaintiff

9    participated in a computer course that required her to sit, hardly provides the requisite

10   specific and legitimate reasons rejecting Dr. Cottle's findings, especially, since it is unclear

11   if the Plaintiff took breaks during the course and the lengthy of the class each day.  The

12   record reveals that the ALJ broadly rejected the significant limitations found by Dr. Cottle

13   and relied primarily on the evaluation performed by the state examining physician, Dr.

14   Barker, who found no limitations regarding Plaintiff's ability to work. (Tr. 330).  However,

15   the fact that an examining physician has a contrary opinion to that of a treating physician,

16   without more, does not provide the requisite specific and legitimate reasons for rejecting the

17   opinion of the treating physician.

18        In sum, the ALJ has not articulated the requisite specific and legitimate reasons in

19   support of his determination rejecting the opinions of Plaintiff's treating physicians, Drs.

20   Markham and Cottle regarding Plaintiff's disability and significant limitations associated with

21   her ability to perform work on a regular basis.

22        **C.    ALJ's Residual Functional Capacity Determination**

23        Lastly, Plaintiff contends that the ALJ erred in his residual functional capacity

24   assessment of Plaintiff to perform "light" work by not providing a narrative discussion

25   describing how the evidence supports each function-by-function assessment.  Defendant

26

27        [3]Although not entirely clear, the record appears to suggest that Plaintiff began treating
     with Dr. Cottle in November of 1997; prior to Dr. Cottle's first residual functional capacity
28   assessment of Plaintiff. (Tr.371-73).

- 15 -

1    opposes Plaintiff's argument, stating that the ALJ's assessment is clearly placed upon the

2    findings of Dr. Bahn and Dr. Barker.  In fact, in reviewing the determination of the ALJ, he

3    expressly stated that in determining Plaintiff's residual functional capacity that he afforded

4    significant weight to the findings of Dr. Bahn which was consistent with the earlier findings

5    of Dr. Barker.  (Tr.316).  In reviewing the record on this issue, the Court cannot find any

6    degree of error with respect to the ALJ's alleged failure to provide a narrative of his findings.

7    While, it may have been helpful for the ALJ to expressly set out each function-by-function

8    assessment, it is plainly clear from the record where the ALJ based his findings.  While,

9    Plaintiff clearly disagrees with this assessment which is controverted by other evidence in

10   the record, the Court cannot find that the ALJ's determination was not supported in the record

11   as Plaintiff argues.  However, while the Court finds that the ALJ adequately set out his

12   residual functional capacity finding, this determination does not bear on the ALJ's failure to

13   properly rebut the Plaintiff's credibility or contradicting opinions from Plaintiff's treating

14   physicians, discussed above.[4]

15        **D.    Future Handling**

16        In Connett, 340 F. 3d at 876, the Ninth Circuit set forth that an award of benefits is

17   discretionary where the reasons for the ALJ's denial are legally insufficient.  If the court

18   determines that there are specific findings still to be made than a remand is appropriate. Id.

19   The growing general rule appears to be that except in rare circumstances, the court should

20   remand to the agency for additional explanation and investigation.  INS v. Ventura, 537 U.S.

21   12, 16, 123 S.Ct. 353 (2002).  The rare circumstances that justify a remand with an entry of

22   an award are if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the

23   evidence, (2) there are no outstanding issues to be resolved before determination of disability

24

25        [4]As to Plaintiff's fourth argument, the Court notes that while it was error for the ALJ

26   to cite the vocational opinion of Dr. Bahn, a non-vocational expert, in support of the ALJ's
     determination that Plaintiff was capable of sustained work (Tr.312), this error is harmless as

27   the ALJ's determination that Plaintiff could perform light work was also based upon the

28   findings of Dr. Barker. (Tr.330-35).

1    can be made, and (3) if it is clear from the record that ALJ is required to find claimant

2    disabled were such evidence credited.  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.

3    2004); see also Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Where this test is met,

4    the relevant testimony will be established to be true and a remand for benefits is proper. Id.

5         Here, the Court finds that the ALJ failed to provide the requisite clear and convincing

6    reasons rejecting Plaintiff's credibility as to the severity of her symptoms as well as the

7    requisite specific and legitimate reasons for rejecting the opinions of Plaintiff's treating

8    physicians.  In crediting the severity of Plaintiff's symptoms and the opinions of Plaintiff's

9    treating physicians as true, it appears there are no additional issues to be addressed and the

10   ALJ would be required to find the Plaintiff disabled if this matter were remanded. It is also

11   relevant to note that Plaintiff's initial disability application in this case was filed in 1994.  As

12   such, because there are no additional issues to be resolved upon remand, the Court will

13   remand with instructions for an award of benefits.

14        **Accordingly,**

15        **IT IS HEREBY ORDERED** granting Plaintiff's Motion for Summary Judgment.

16   (Dkt.#7).

17        **IT IS FURTHER ORDERED** denying Defendant's cross-Motion for Summary

18   Judgment. (Dkt.#10).

19        **IT IS FURTHER ORDERED** that this matter be remanded to the Commissioner of

20   Social Security for an award of benefits.

21        DATED this 29th day of March, 2007.

22

23

24   _____

25                Mary H. Murguia
             United States District Judge

26

27

28

- 17 -